

David L. Bissett
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| SHERYL DYAN RUSSELL, | ) | Case No. 3:24-bk-116 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| | ) | |
| RYAN W. JOHNSON, *Standing Chapter* | ) | |
| *13 Trustee for West Virginia*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. 3:24-ap-10 |
| CLARK STRUEBING, | ) | |
| BRENDA STRUEBING, | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| and CWMBS, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION

Pending before the court are two motions to dismiss Plaintiff's Adversary Complaint pursuant to Fed. R. Civ. P. 12(b)(6) made applicable here by Fed. R. Bankr. P. 7012(b).  In his complaint, Ryan Johnson ("Plaintiff"), Chapter 13 Trustee for the bankruptcy estate of Sheryl Dyan Russell ("Debtor"), claims the post-petition foreclosure sale of real property of the estate to Clark and Brenda Struebing is avoidable under 11 U.S.C. § 549 because the sale was not authorized and he did not abandon the property pursuant to 11 U.S.C. § 554.  The Struebings, CWMBS, Inc., and The Bank of New York Mellon ("Defendants") move to dismiss on the grounds that the sale was proper because no stay existed preventing foreclosure, the Bankruptcy Code authorizes the foreclosure sale through 11 U.S.C. § 362(c)(4), and lack of abandonment by the Plaintiff only entitles the estate to excess proceeds.

For the reasons stated herein, the court will grant the Defendants' motions to dismiss.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint against it when the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  When evaluating a motion to dismiss, the court must (1) construe the complaint in a light favorable to the non-movant, (2) accept the factual allegations in the complaint as true, and (3) draw all reasonable inferences in favor of the plaintiff.  2 *Moore's Federal Practice – Civil* § 12.34 (2018).  After undertaking these steps, the claim for relief must be "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570 (2007)).  In determining a motion to dismiss, the court is not adjudicating whether a plaintiff will ultimately prevail on the merits of the complaint; it is only determining if the plaintiff is entitled to offer evidence to support the claims.  *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).  In the Fourth Circuit, this standard requires the plaintiff to articulate facts that, when accepted as true, show a plausibility of entitlement to the relief sought.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Failure to meet this standard results in dismissal of the complaint. *Id.*

## II.  BACKGROUND

On March 8, 2024, the Debtor filed a Chapter 7 petition, *pro se*, in response to a pending foreclosure proceeding regarding 104 Stonehouse Lane, Shepherdstown, West Virginia, 25443 ("Stonehouse Property").  Notably, this case is the Debtor's third within the previous five months.[1]  On March 12, 2024, the Stonehouse Property was sold to the Struebings for $357,000, leaving $17,216.05 in excess funds after satisfying the lien of CWMBS, Inc.  Despite the fact that the Stonehouse Property was assessed at $328,499, and sold at a public auction for $357,000, the Plaintiff believes the market value to be between $401,000 and $470,000 solely based on real estate website estimates.[2]

---

[1] The court dismissed the first case No. 22-bk-416 (Chapter 13) on October 18, 2023, and it dismissed the second case No. 23-bk-584 (Chapter 7) on January 23, 2024.

[2] In fact, in the Debtor's previous Chapter 13 case, the Debtor marketed the Stonehouse Property for approximately one year resulting in no proposed offers, which ultimately contributed to the dismissal of the case.

On April 9, 2024, the Debtor converted her case to Chapter 13 and sought to "reinstate" the automatic stay.[3]  The court granted the motion to convert on April 10, 2024, and the Plaintiff was appointed as Chapter 13 Trustee.  During a hearing on April 25, 2024, the court denied the Debtor's stay motion, ruling that there was no basis upon which to reinstate the stay or otherwise enjoin creditors.  In conjunction with its disposition, the court noted that there was no stay in place at the time of the foreclosure such that the creditor was free to act. On May 6, 2024, the Plaintiff filed the Adversary Proceeding.

### III.  DISCUSSION

There is no factual dispute between the parties.  This dispute revolves around the interpretation of § 549(a), the application of § 362(c)(4), and the interplay between the two sections.[4]  The Plaintiff argues that the estate may avoid the post-petition transfer of the Stonehouse Property to the Struebings under § 549(a) because the foreclosure sale was not authorized by the court or the Bankruptcy Code, and the bankruptcy estate did not abandon the property.  The Defendants argue that the Bankruptcy Code's intentional removal of stay protection under § 362(c)(4) authorized the foreclosure sale.  Additionally, the Defendants assert that abandonment is not required for a secured creditor to foreclose on property that is not protected by § 362.

### A.  § 362 Automatic Stay

Initiated by the filing of a petition, § 362 stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."  It protects debtors and the bankruptcy estate against collection attempts and plays a vital role in bankruptcy cases.  Indeed, "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992) (quoting H.R. Rep No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963,6296–97).

---

[3] The court construed the motion as one to initiate the stay rather than reinstate because no stay was ever in place.

[4] It is worth noting at the outset that, although unchallenged by the Defendants, the Plaintiff's standing to bring an avoidance action under § 549 is questionable.  The Plaintiff must establish that the estate suffered an injury as a result of the transfer attempting to be avoided.  *In re Wood Treaters, LLC*, 491 B.R. 591, 596 (Bankr. M.D. Fla. 2013).  "Generally, where an avoidance action will benefit a particular creditor rather than the creditor body as a whole, a trustee does not have standing to pursue the claim." *In re Duckworth*, No. 10-83603, 2012 WL 4434681, at *4 (Bankr. C.D. Ill. Sept. 24, 2012).  The Plaintiff admits in the Complaint that the Stonehouse Property sold for $28,501 more than its appraised value.  The only other information in the Complaint relating to potential damages is the speculative assertion that the Stonehouse Property's market value *could be* as high as $401,000 to $470,000.  The Debtor's Schedule D lists a second lienholder with a claim of $68,000.

Even with its fundamental role in bankruptcy proceedings, Congress saw the need to reduce or eliminate stay protection to repetitive and abusive filers.  *See In re Nelson*, 391 B.R. 437, 452 (B.A.P. 9th Cir. 2008).  Section 362(c)(3) reduces stay protection of the debtor to 30 days for individual filers with one previous bankruptcy case pending and dismissed within the preceding one year.  In these cases, the court may grant a continuation of the stay beyond the initial 30 days if the party in interest rebuts the presumption of bad faith.  § 362(c)(3)(B)–(C).

In § 362(c)(4), Congress goes further and eliminates stay protection of the debtor *and* the estate when the individual filer has two previous cases pending and dismissed within the preceding one year.  In these cases, the court may order the stay to take effect if the party in interest rebuts the presumption of bad faith within 30 days after the filing of the latest case. "While § 362(c)(4)(B) provides a debtor with a history of multiple recent filings the means to seek imposition of the stay, nothing in the Bankruptcy Code or Bankruptcy Rules precludes a creditor from continuing its collection efforts until a stay is imposed."  *In re Cook*, 614 B.R. 635, 645 (Bankr. N.D. Ga. 2020).  The overall effect of these two code provisions shifts the burden to the debtor (or trustee) to actively request stay protection when the debtor is a repeat filer.

Here, the petition implicates § 362(c)(4) because the Debtor had two previous cases that the court dismissed within the past year.  As a result of the repetitive filings, neither the Debtor nor the estate is protected under § 362.  Although the Debtor eventually requested § 362 protection, she filed the motion after the deadline in the Bankruptcy Code.[5]  Even if the Debtor made a timely request, she did not present any evidence at the April 25th hearing to rebut the bad-faith presumption.  Notably, the Plaintiff chose not to take a position at the April 25th hearing, and, to date, has not provided any information to rebut the bad-faith presumption.

## B.  § 549 Avoidance

Section 549(a) provides that the trustee may avoid post-petition transfers of estate property that are not authorized by the Bankruptcy Code or by the court.  Notably, the predominant function of § 549 is to protect against debtor-initiated transfers of estate property. *In re Schwartz*, 954 F.2d 569, 574 (9th Cir. 1992).  Indeed, many courts have held § 549 *only*

---

[5] The foreclosure occurred four days after the Debtor filed her petition.  To prevent the foreclosure, the Debtor would have had to file a request for expedited relief with her petition.  She filed her motion over one month after filing her petition.

4

applies to debtor-initiated transfers. *Id.* ("Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property."); *In re Ellis*, 441 B.R. 656, 662 (Bankr. D. Idaho 2010) ("[T]he fundamental factor in determining whether analysis should proceed under § 362 or § 549 is the identity of the transfer-initiating party."); *In re Striblin*, 349 B.R. 301, 303 (Bankr. M.D. Fla. 2006) ("Section 549 applies only to debtor initiated transfers."); *In re Ducker*, No. 06-70250, 2007 WL 1119640, at *2 (Bankr. E.D. Ky. Apr. 3, 2007) (agreeing with *Striblin*). Although the court is not going so far as to bar any § 549 avoidance action for non debtor-initiated transfers, these cases speak to the intended purpose of § 549 and provide guidance on its interplay with § 362. Therefore, the court must view §§ 549 and 362 together to achieve the intended purpose of the Bankruptcy Code.

Section 362 unquestionably governs the type of transfer that occurred here. Under more typical circumstances, the automatic stay under § 362(a) would prohibit a foreclosure sale. Had the Debtor only had one previous bankruptcy case pending within the previous year, § 362 would have protected against the foreclosure sale for the first 30 days following the filing of the petition. It could even be argued that § 362 protection extends beyond the 30 days as it relates to the interests of the estate based on the interpretation of § 362(c)(3). Section 362(c)(4) leaves no room for this argument.

The court's decision hinges on the interpretation of "authorized" in § 549 because Congress did not define it in the Bankruptcy Code. When questioning the authorization of a post-petition transfer of property of the estate, one approach is to examine the Bankruptcy Code section that governs the type of transfer in question. *In re Wood Treaters*, *LLC*, 491 B.R. 591, 593 (Bankr. M.D. Fla. 2013). In *Wood Treaters*, the transfer in question relates to the use of cash collateral, leading the court to § 363(c)(2). *Id.* at 595. Here, the transfer in question relates to a bank-initiated foreclosure with no automatic stay protection, leading the court to § 362(c)(4).

By intentionally removing the stay protection in this context, Congress is authorizing actions that the automatic stay normally protects against. Any other interpretation would defeat the entire purpose of § 362(c)(4). A court lifting the automatic stay serves to authorize creditors to exercise their rights under state law. *Matter of Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 726 (5th Cir. 1991) ("In practical terms, the lifting of the stay and vacation of the TRO *constituted* authorization to conduct a foreclosure sale as provided under state law.") (emphasis added).

5

Similarly, when the Bankruptcy Code itself removes stay protection, the same authorization must be imputed.  Here, the Bankruptcy Code clearly authorizes creditors to pursue their state law rights through the application of § 362(c)(4).  This authorization defeats the Plaintiff's claim for § 549 avoidance.

## C.  § 554 Abandonment

Plaintiff's assertion that the lack of abandonment under § 554 allows for avoidance also misses the mark.  Notably, § 554 involves the estate's interest in property and allows for abandonment of property that is burdensome or of inconsequential value to the estate.  Section 554 has no effect on a § 549 analysis regarding the trustee's ability to avoid an unauthorized post-petition transfer.  Furthermore, § 362 protection, or lack thereof, neither creates nor eliminates an interest in property.  *Catalano v. Comm'r*, 279 F.3d 682, 687 (9th Cir. 2002) ("an order lifting the automatic stay by itself does not release the estate's interest in the property").  However, by not abandoning the property, the estate retains the rights to any excess proceeds resulting from the foreclosure sale despite the removal of § 362 stay protection.  *Nelson*, 391 B.R. at 452 ("in a case subject to § 362(c)(4)(A)(i), while property of the estate is not immune to enforcement of creditor interests, the estate's interest in that property is not extinguished or abandoned").

> In fact, "[r]elief from an automatic stay entitles the creditor to realize its security interest ... in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee .... Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property and the act of lifting the automatic stay is not analogous to an abandonment of property."

*In re Hardison*, No. 2:06-BK-20225, 2020 WL 1547906, at *6 (Bankr. S.D.W. Va. Mar. 31, 2020) (quoting *In re Brook Valley IV*, 347 B.R. 662, 671 (B.A.P. 8th Cir. 2006)).

Here, the foreclosure sale left $17,216.05 in excess proceeds.  The Plaintiff has an interest in these proceeds subject to any other allowable interests in the Stonehouse Property.[6]

---

[6] Plaintiff relies heavily on *In re Zimmerman*, but that court focuses on the statutory requirements of § 554 and specifically clarifies that lifting the automatic stay does not result in abandonment.  *In re Zimmerman*, No. ADV. 07-00406RJH, 2008 WL 1925123, *2 (D. Ariz. May 1, 2008).  In *Zimmerman*, the court authorized one specific creditor to proceed with foreclosure based on the parties agreeing to lift the stay relating to that one creditor only.  *Id* at *1.  The creditor transferred the property to another corporation.  *Id.*  The corporation then sold the property to a buyer, paid off the creditor, and kept (and spent) the excess proceeds from the sale.  *Id.*  The automatic stay was still in

### III. Conclusion

Based upon the foregoing, the post-petition transfer of the Stonehouse Property is not avoidable under § 549(a) because the foreclosure sale was authorized by the Bankruptcy Code through the application of § 362(c)(4).  Section 362(c)(4) intentionally removes the automatic stay protection normally afforded to property of a bankruptcy estate leaving the debtor and the estate unprotected from creditors looking to enforce their collection rights.  It is precisely this stay protection that would prevent a creditor from foreclosing on its secured interest.  Any other interpretation of § 549(a) would negate the meaning and purpose behind § 362(c)(4) and lead to the absurd result of a damage claim against a creditor for acting to collect on its state law property rights intentionally left unprotected by the Bankruptcy Code.  Further, lack of abandonment by the Plaintiff under § 554 preserves the estate's interest in any excess proceeds from the foreclosure sale of the Stonehouse Property but nothing more.

For these reasons, the court will enter a separate order granting the Defendants' motions to dismiss.

---

place but for the one creditor.  The estate was damaged by not receiving the excess proceeds from the sale.  The facts in *Zimmerman* are in no way analogous to those before this court.